IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Kevin L. Grant, ) | Civil Action No. 6:14-1313-DCN-KFM |
| ) Petitioner, ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Dennis Bush, *Warden*, ) | |
| ) Respondent. ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

The petitioner is currently incarcerated at the Lee Correctional Institution. He was indicted by a Charleston County Grand Jury in November 2005 for use of a firearm during the commission of a violent felony, murder. In February 2006, he was indicted for murder (App. 617-18, 620-21). The petitioner was convicted at jury trial before the Honorable Diedre Jefferson on March 9, 2006 (App. 610-11). Judge Jefferson sentenced the petitioner to 30 years imprisonment for murder and five years concurrent on the weapons charge (App. 619, 622). The petitioner filed an appeal.

Chief Appellate Defender Joseph L. Savitz, III, of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal. On December 27, 2007, appellate counsel filed a Final Brief of Appellant in the South Carolina Court of Appeals raising the following issues:

> 1. The trial judge erred by failing to direct a verdict acquitting Grant of the charges, since the State's circumstantial evidence

>was neither substantial nor did it reasonably tend to prove that Grant was guilty.
>
>2. The trial judge committed reversible error by allowing into evidence a statement Grant made only after he was told by the detective who was interrogating him that "his cooperation could really only benefit him," since it was induced by this implied promise and thus involuntary.

(Doc. 24-3 at 3).

The State had submitted its final brief on November 13, 2007 (doc. 24-4). The Court of Appeals heard oral argument on January 8, 2009, and issued an unpublished opinion affirming the conviction on February 12, 2009 (doc. 24-5). The petitioner did not seek rehearing and review by the Supreme Court of South Carolina; thus, the Court of Appeals issued the remittitur on March 2, 2009. [1]

On March 25, 2010, the petitioner filed an application for post-conviction relief ("PCR"), in which he raised the following claims of ineffective assistance of counsel:

>(a) Was counsel ineffective for failing to object to the prosecution's improper closing that used conclusions of evidence that the prosecution was not qualified to give?
>
>(b) Was counsel ineffective for failing to object to the prosecution's improper closing argument that misquoted evidence and denied Petitioner his right to a fair trial?
>
>(c) Was counsel ineffective for failing to object to the trial court's malice instructions that "failed" to instruct the jury that they could either "accept or reject" the inference that malice

---

[1] The petitioner was not categorically barred from seeking certiorari review from the Supreme Court of South Carolina. On February 19, 2009, subsequent to the opinion but prior to the remittitur, the Supreme Court of South Carolina barred petitions from matters reviewed pursuant to *Anders v. California*, 386 U.S. 738 (1967). *See State v. Lyles*, 673 S.E.2d 811, 812 (S.C. 2009) ("as a matter of policy, we will not entertain petitions for writs of certiorari to the Court of Appeals where the Court of Appeals has conducted an *Anders* review."). However, the petitioner's direct appeal was not submitted under the *Anders* process. Thus, seeking review was not impossible, though not necessary to exhaust remedies according to state court precedent. *In re Exhaustion of State Remedies in Criminal & Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990) ("We therefore declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.").

2

> could be inferred from the use of a deadly weapon that resulted in a mandatory burden shifting instruction?

(App. 625, 634-49).

On June 21, 2010, the State filed its return and motion to dismiss for failure to file within the one-year statute of limitations (App. 653-56). Mark Archer represented the petitioner in the action. On September 14, 2010, the Honorable Roger M. Young denied the State's motion finding that it was "equitable to toll statute of limitations due to paperwork of applicant not at facility he was being housed and his appellate attorney gave him incorrect advice of appeal date information" (doc. 24-7).[2]

An evidentiary hearing was held on November 17, 2012, before the Honorable Kristi Harrington. At the conclusion of the hearing, Judge Harrington left the record open for receipt of additional testimony (App. 713). The hearing reconvened on February 28, 2012 (App. 718). At the conclusion of the February hearing, the PCR judge allowed both sides to submit proposed orders (App. 780). By order dated March 12, 2012, filed March 15, 2012, Judge Harrington denying relief and dismissed the action (App. 797-808). Petitioner appealed the denial of relief.

Appellate Defender Kathrine H. Hudgins of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented the petitioner on appeal. Appellate counsel filed a petition for writ of certiorari in the Supreme Court of South Carolina on January 31, 2013, and raised the following issue:

> Did the PCR judge err in refusing to grant a new trial based on the after discovered evidence of witness Cornelius Morrison, a witness unknown at the time of trial, who testified that he was at the Waffle House on the night of the shooting, was watching petitioner when shots rang out and petitioner was not the one who shot the victim?

---

[2] The respondent states in the return that it appears from attorney notes in the state PCR file that a hearing was held on September 14, 2010, before Judge Young on the State's motion, and the motion was denied at the hearing (doc. 24 at 3 n.2). The respondent filed the transcript of the hearing as an additional attachment to the return on November 20, 2014 (doc. 42-1).

3

(Doc. 24-8 at 2).

On June 20, 2013, the State filed a return to the petition (doc. 24-9). The matter was then transferred to the South Carolina Court of Appeals. By order dated March 21, 2014, the South Carolina Court of Appeals denied the petition for review (doc. 24-10). The Court of Appeals subsequently issued the remittitur on April 11, 2014 (doc. 24-11). The petitioner was barred from seeking further review from the Supreme Court of South Carolina. *See Ellison v. State*, 676 S.E.2d 671, 672 (S.C. 2009) (barring petitions to the Supreme Court of South Carolina seeking review of orders issued by the South Carolina Court of Appeals denying discretionary review of PCR matters)

The petitioner delivered the federal petition for writ of habeas corpus now before this court to the prison mailing system on April 7, 2014 (doc. 1 at 14; doc. 1-1).[3] In his federal petition, the petitioner makes the following claim: "**Ground One**: Ineffective Assistance of Counsel in violation of the U.S. Constitution, Amendment VI" (doc. 1 at 5).

On September 11, 2014, the respondent filed a return and motion for summary judgment (docs. 23, 24). By order filed on September 12, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his response in opposition on November 3, 2014 (doc. 40). On that same date, the petitioner filed a motion for judgment on the pleadings (doc. 37) and a motion for evidentiary hearing (doc. 38). The respondent filed a response in opposition to the petitioner's motions on November 20, 2014 (doc. 43).

---

[3]As the petitioner is a prisoner, he should have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), which held that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court.

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The present habeas corpus petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Accordingly, the

provisions of the AEDPA apply to this case. *Lindh v. Murphy*, 521 U.S. 320 (1997). The respondent first argues that the petition is untimely under the one-year statutory deadline set forth in the AEDPA. This court agrees. The one-year time period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[4] However, "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2). State collateral review tolls the one-year statute of limitations under Section 2244(d)(1)(A) for properly filed pleadings, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), but it does not establish a right to file within one year after completion of collateral review. *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000).

Applying this criteria to the present case, the petitioner did not timely file within the one-year limitations period in Section 2244(d)(1)(A). The petitioner's state court convictions became final on February 27, 2009, fifteen days after the South Carolina Court of Appeals issued the opinion in the petitioner's direct appeal (*see* doc. 24-5). The petitioner did not file a timely petition for rehearing. *See Gonzalez. v. Thaler*, 132 S. Ct. 641, 654 (2012) (rejecting use of remittitur dates in applying Section 2244(d)(1)(A) and stating that because petitioner "did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired"); Rule 221(a), SCACR (petition for rehearing must be actually received by the court within fifteen (15) days from opinion); Rule 242(d), SCACR ("only questions raised in the Court of Appeals and in the petition for rehearing" may be raised in a petition to the supreme court). Having failed to file a petition for rehearing, the petitioner could not seek certiorari from the Supreme Court of South Carolina as the remittitur must be issued absent the timely filing of such a petition. *See* Rule 221(b), SCACR. *See also Wise v. South Carolina Dept. of Corrections*, 642 S.E.2d 551, 551 (S.C. 2007) ("When the remittitur has been properly sent, the appellate

---

[4] The statute provides other possible start dates for the one-year time period that are not relevant here. *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

court no longer has jurisdiction over the matter and no motion can be heard thereafter."). Further, the petitioner is not entitled to an additional 90 days in which he could have sought certiorari as he did not seek review from the Supreme Court of South Carolina. *Gonzalez,* 132 S.Ct. at 654 ("because Gonzalez did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired"). Failure to seek certiorari from the Supreme Court of South Carolina precluded the petitioner from meeting the jurisdictional requirements of the Supreme Court of the United States. 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari..."). *Upson v. Warden of Ridgeland Correctional Inst.*, C.A. No. 9:12-98-MGL, 2013 WL 5145220, at *5 n.6 (D.S.C. 2013) ("Since Petitioner did not seek review of the decision of the Court of Appeals from the South Carolina Supreme Court, he is not entitled to a tolling of the ninety (90) days to seek certiorari review from the United States Supreme Court."). Thus, the petitioner's period of limitation began on February 27, 2009, and expired one year later on February 27, 2010.

The petitioner filed a state PCR action 391 days later on March 25, 2010. The petitioner argues that the instant action was timely filed as the state PCR action tolled the time (doc. 1 at 13). However this is contrary to Fourth Circuit precedent that allows for suspending, not restarting , the federal time period. *Harris v. Hutchinson*, 209 F. 3d 325, 328 (4th Cir. 2000). Even if the PCR application had been properly filed and could toll the statute of limitations, the current federal petition would still be untimely as the time period for filing the federal habeas petition had already expired when the petitioner's PCR application was filed.

The AEDPA statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631 (2010)*; Harris*, 209 F.3d at 329-30*.* "To be entitled to equitable tolling, [the petitioner] must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). Equitable tolling "must be

7

reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris*, 209 F.3d at 330.

Here, the petitioner "asserts not an excuse for filing after the statute of limitations has run. Instead, he maintains that a plea of actual innocence can overcome AEDPA's one year statute of limitations. He thus seeks an equitable *exception* to § 2244(d)(1), not an extension of the time statutorily prescribed." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013) (emphasis in original) (citing *Rivas v. Fischer*, 687 F.3d 514, 547 n. 42 (2nd Cir. 2012) (distinguishing from "equitable tolling" a plea to override the statute of limitations when actual innocence is shown)). The petitioner argues in his response to the motion for summary judgment (doc. 40) and in his motions for judgment on the pleadings and for an evidentiary hearing (docs. 37, 38) that he is actually innocent of his crimes of conviction, and thus, under *McQuiggin*, the court should consider the merits of his petition. He argues:

> [T]he state has unconstitutionally obtained a verdict based on scant circumstantial evidence. Where the trial record shows that the state produced no proof or eyewitness to say at trial they saw me shoot anyone. Moreover, what state did was present video depicting me in area and allowed jury to speculate that at time of shooting, since I was in area it is a reasonable probability it was me shooting. Such evidence presented cannot be proof of guilt beyond a reasonable doubt . . . . This witness who was next to me confirmed that it was not me that did shooting and simply because my clothes according to state stood out among others and my statement I was wearing those clothes without more should not and cannot form basis of a conviction as it was herein. . . .

(Doc. 40 at 2; *see also* docs. 37 & 38 at 2).

The Supreme Court has recognized that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring a habeas petition after the statute of limitations expires. *McQuiggin*, 133 S.Ct. at 1928 ("[A] credible showing of innocence may allow a prisoner to pursue his constitutional claims ... on the merits

8

notwithstanding the existence of a procedural bar to relief."). However, "claims of actual innocence are rarely successful," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and "should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir.1998). "To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *McQuiggin*, 133 S.Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327). Further, "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.'" *Id.* at 1936 (quoting *Schlup*, 513 U.S. at 316).

The evidence presented at the petitioner's trial showed that on September 15, 2002, the victim in this case, Kevin Christopher Brightman, with his friend, Yolanda June, went to a local Waffle House after going to a club (App. 265). Yolanda testified that Kevin and she went inside and ordered, and "Vortez and the heavyset fellow with a red jersey" got into an argument "over some girl" (App. 266-67). Kevin, who knew Vortez, "tried to make peace" and said "there wasn't going to be nothing" and that "his people came out there just to have a good time" (App. 267). Kevin left the building to get the car for Yolanda (App. 268). Yolanda then heard shots being fired. She saw Kevin by her car and went to him (App. 269-70). Kevin was on the ground on the driver's side of the car (App. 270). He had sustained three gunshot wounds and later died. Glen Gladden, the petitioner's friend, was also hurt. Yolanda recalled that Gladden stated, "My nigger shot me in my foot" (App. 282).

Justin Singleton was also at the club and the Waffle House that night. Justin testified that he was close to Glen Gladden when the shots were fired, and Glen was shot. Justin testified that the petitioner came to the hospital were Glen was treated. Justin heard the petitioner say, "[M]y bad, my bad" (App. 437).

Julius Brown testified that an argument broke out at the Waffle House between people from North Charleston and people from Dorchester Road concerning an "assault" on Julius' sister. Victim Kevin Brightman was with the group from North Charleston, and Julius was with the other group. Kevin told someone to "go get the gun," but Kevin never had a gun, and Kevin left. Julius also left the restaurant. Julius spoke to Kevin outside. The petitioner was right next to Kevin. Julius asked Kevin, "why he was saying everything was all right if his home boy running to go get a gun." Julius put his arm on Kevin, Kevin put his arm on Julius, and the petitioner knocked Kevin's arm from Julius, and then shots were fired. Julius could not testify where the shots came from but stated they were "loud" (App. 310-13).

SLED examined gunshot residue samples. The swabs from the victim showed gunshot residue levels that indicated his right hand was "was probably within five feet" of the gun when the gun was fired (App. 362). Further, the lead pattern on victim's shirt indicated a closer range of approximately three feet from the gun (App. 363).

Sergeant Barry Goldstein testified that, in a first interview, the petitioner admitted being present but initially told the officer he left when the shooting began (App. 464-65). In a second interview, the petitioner was shown the surveillance recording from the Waffle House parking lot. He again indicated he was away from the area (App. 472-74). In a third interview and after *Miranda* warnings were given, Sergeant Goldstein testified that the petitioner stated that he "didn't want to spend the rest of his life in jail" and that "he wasn't going to try to the beat the charges" (App. 478-80). Detective Fleming also testified to the petitioner's statement that "he wasn't going to try to beat it" (App. 506-507).

As set forth above, the petitioner argues in his response to the motion for summary judgment that the State "unconstitutionally obtained a verdict based [on] scant circumstantial evidence" (doc. 40 at 2). The only "new" evidence referenced by the petitioner is the testimony of Cornelius Morrison, who testified at the PCR hearing that he

10

was near the petitioner when they heard gunshots. He further testified that at no time did he see the petitioner with a gun (App. 760-61). He also testified that the petitioner looked around as if to determine where the shots came from, and then he walked toward Glen Gladden (App. 762).

The PCR judge found the petitioner's alleged "newly discovered evidence," which consisted of Morrison's testimony, was "not credible." The PCR judge noted that Morrison's testimony regarding the petitioner's actions after the gunshots was inconsistent with the prosecutor's testimony describing the scene on the surveillance video (App. 807). Specifically, the prosecutor described the video as showing people running away from where the petitioner remained standing still. He then ran in the direction of victim Kevin Brightman, not away from the gunshots as one would expect if the gunshots were coming from someone else (App. 726-27, 730-31). The PCR judge further found that the petitioner failed to show that this information could not have been discovered before the trial. The PCR judge determined that Morrison's testimony "did not constitute newly discovered evidence" under state precedent (App. 806-807). No other evidence is mentioned by the petitioner other than that presented at trial.

The petitioner has failed to demonstrate that no reasonable juror could find him guilty beyond a reasonable doubt in light of the new evidence. Accordingly, his actual innocence claim does not prevent application of the one-year limitation period, and the petition should be dismissed as it was not timely filed.

Furthermore, even if the petition was timely filed, the petitioner raises one ground of ineffective assistance of counsel in his petition, but alleges no supporting facts (*see* doc. 1 at 5). "Vague allegations, without any explanation of the alleged constitutional errors, do not warrant federal habeas relief." *McKissick v. Warden Evans Correctional Inst.*, C.A. No. 2:12-cv-15-RBH, 2013 WL 4585613, at *10 (D.S.C. Aug. 28, 2013) (citing Rule 2(c) of the Rules Governing Section 2254 Cases ("The petition must ... state the facts supporting

each ground ....")). See *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970) ("The petition should set out substantive facts that will enable the court to see a real possibility of constitutional error."). Such "[u]nsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *overruled on other grounds by Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). Accordingly, the petitioner is not entitled to relief pursuant to Section 2254.

The petitioner filed a motion for judgment on the pleadings and a motion for evidentiary hearing in which he makes the same arguments he made in response to the motion for summary judgment (*see* docs. 37, 38). An evidentiary hearing in a federal habeas action challenging a state conviction will not be held unless the petitioner shows that the claim relies on a new rule of law or that the factual basis for the claim at issue was unavailable and the facts sought to be proved would "establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense." 28 U.S.C.A. § 2254(e)(2). The petitioner has failed to make the required showing.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 23) be granted. *See Rouse v. Lee*, 339 F.3d 238, 257 (4th Cir. 2003) (affirming dismissal of petition filed one day late), *cert. denied*, 541 U.S. 905 (2004). Furthermore, the petitioner's motion for judgment on the pleadings (doc. 37) and motion for evidentiary hearing (doc. 38) should be denied.

s/Kevin F. McDonald
United States Magistrate Judge

March 9, 2015
Greenville, South Carolina