# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | | |
|---|---|---|
| KEVIN L. GRANT, #290062, | ) | |
| | ) | |
| Petitioner, | ) | No. 6:14-cv-01313-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| DENNIS BUSH, *Warden of Lee Correctional Institution*, | ) ) | |
| | ) | |
| Respondent. | ) ) | |

This matter is before the court on United States Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R&R") that this court grant respondent Dennis Bush's ("Bush") motion for summary judgment and deny petitioner Kevin L. Grant's ("Grant") motions for judgment on the pleadings and for an evidentiary hearing. For the reasons set forth below, the magistrate's R&R is affirmed, Bush's motion for summary judgment is granted, and Grant's motions for judgment on the pleadings and for an evidentiary hearing are denied.

## I.  BACKGROUND

Grant is currently incarcerated at Lee Correctional Institution. A Charleston County grand jury indicted Grant in November 2005 for use of a firearm during the commission of a violent crime, see S.C. Code Ann. § 16-23-490, and in February 2006 for murder. Following a jury trial before the Honorable Diedre Jefferson on March 9, 2006, Grant was convicted as charged. Judge Jefferson sentenced Grant to thirty years imprisonment for murder and a five-year concurrent sentence for the weapons charge. Grant appealed the court's judgment.

1

### A. Direct Appeal

On December 27, 2007, Grant filed his brief in the South Carolina Court of Appeals raising the following two issues:

> 1. The trial judge erred by failing to direct a verdict acquitting Grant of the charges, since the State's circumstantial evidence was neither substantial nor did it reasonably tend to prove that Grant was guilty.
>
> 2. The trial judge committed reversible error by allowing into evidence a statement Grant made only after he was told by the detective who was interrogating him that "his cooperation could really only benefit him," since it was induced by this implied promise and thus involuntary.

Pet'r's Appeal Br. 3, ECF No. 24-3. The South Carolina Court of Appeals heard oral arguments on January 8, 2009 and issued an unpublished opinion affirming Grant's convictions on February 12, 2009. Grant did not seek a rehearing and review by the South Carolina Supreme Court; thus, the South Carolina Court of Appeals issued a remittitur on March 2, 2009.[1]

### B. PCR Application

On March 25, 2010, Grant filed an application for post-conviction relief, in which he raised the following claims:

> 1. Was counsel ineffective for failing to object to the prosecution's improper closing that used conclusions of evidence that the prosecution was not qualified to give?

---

[1] Grant was not categorically barred from seeking certiorari review from the South Carolina Supreme Court. On February 12, 2009, subsequent to the opinion but prior to the remittitur, the South Carolina Supreme Court barred petitions from matters reviewed pursuant to Anders v. California, 386 U.S. 738 (1967). See State v. Lyles, 673 S.E.2d 811, 812 (S.C. 2009) ("[A]s a matter of policy, we will not entertain petitions for writs of certiorari to the Court of Appeals where the Court of Appeals has conducted an Anders review."). However, Grant's direct appeal was not submitted pursuant to the Anders process. Thus, while seeking review was possible, Supreme Court review was not necessary for Grant to exhaust remedies according to state court precedent. In re Exhaustion of State Remedies in Criminal & Post-Conviction Relief Cases, 471 S.E.2d 454 (S.C. 1990) ("We therefore declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.").

2

> 2. Was counsel ineffective for failing to object to the prosecution's improper closing argument that misquoted evidence and denied Petitioner his right to a fair trial?
>
> 3. Was counsel ineffective for failing to object to the trial court's malice instructions that "failed" to instruct the jury that they could either "accept or reject" the inference that malice could be inferred from the use of a deadly weapon that resulted in a mandatory burden shifting instruction?

Pet'r's PCR Appl. 3, 6, 11, ECF No. 24-2. On June 21, 2010, the state filed its return and motion to dismiss for failure to file the post-conviction relief application within the one-year statute of limitations period. See Resp't's Return & Mot. to Dismiss 3, ECF No. 24-2. On September 24, 2010, the Honorable Roger M. Young denied the state's motion, reasoning that it was "equitable to toll statute of limitations due to paperwork of applicant not at facility he was being housed [sic] and his appellate attorney gave him incorrect advice of appeal date information." Order 1, ECF No. 24-7.

On November 17, 2012, the Honorable Kristi Harrington held an evidentiary hearing regarding Grant's PCR. At the conclusion of the hearing, Judge Harrington left the record open for receipt of additional testimony. The hearing reconvened on February 28, 2012. At the conclusion of the second hearing, Judge Harrington allowed both sides to submit proposed orders within ten days. Judge Harrington denied the requested relief and dismissed Grant's action by order dated March 12, 2012. See Order of Dismissal, March 12, 2012, ECF No. 24-2. Grant subsequently appealed the denial of relief.

Grant's appellate counsel filed a petition for writ of certiorari in the South Carolina Supreme Court on January 31, 2013 and raised the following issue:

> Did the PCR judge err in refusing to grant a new trial based on the after discovered evidence of witness Cornelius Morrison, a witness unknown at the time of trial, who testified that he was at the Waffle House on the night of the shooting, was watching petitioner when shots rang out and petitioner was not the one who shot the victim?

Pet'r's Pet. for Writ of Cert. 2, ECF No. 24-8. On June 20, 2013, the state filed a return to the petition. The matter was subsequently transferred to the South Carolina Court of Appeals. By order dated March 21, 2014, the South Carolina Court of Appeals denied the petition for review, and the court thereafter issued remittitur on April 11, 2014. Grant was barred from seeking further review from the South Carolina Supreme Court. See Ellison v. State, 676 S.E.2d 671, 672 (S.C. 2009) (barring petitions to the South Carolina Supreme Court seeking review of orders issued by the South Carolina Court of Appeals denying discretionary review of post-conviction relief matters).

### C. Federal Habeas Petition

On April 15, 2014, Grant filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he was denied effective assistance of counsel in violation of the Sixth Amendment. In his petition, Grant makes the following claim: "Ineffective Assistance of Counsel in violation of the U.S. Constitution, Amendment VI." Pet'r's Br. 6. On September 11, 2014, Bush filed a return and motion for summary judgment. The court issued an order on September 12, 2014 advising Grant of the summary judgment dismissal procedure and the possible consequences for failure to adequately respond to the motion. See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Grant filed his response in opposition to Bush's summary judgment motion on November 3, 2014. Grant also filed a motion for judgment on the pleadings and a motion for an evidentiary hearing on November 3, 2014. Bush filed a response in opposition to Grant's motions on November 20, 2014.

The magistrate judge issued an R&R on March 9, 2015 recommending that Bush's motion for summary judgment be granted and Grant's motions for judgment on

4

the pleadings and for an evidentiary hearing be denied. The magistrate judge determined that Grant failed to timely file his petition within the applicable statute of limitations. Grant filed objections to the R&R on March 26, 2015, and the matter is now ripe for this court's review.

## II.   STANDARDS OF REVIEW

### A.  R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. 636(b)(1). The court may adopt the portions of the R&R to which the petitioner did not object, as a party's failure to object is accepted as agreement with the conclusions of the magistrate judge. Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and it is this court's responsibility to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

### B.  Pro Se

Grant appears pro se in this case. Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow for the development of a potentially meritorious claim. See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Liberal construction, however, does not mean that the court may ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### C. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Rule 12(c), see Fed. R. Civ. P. 12(c), should not be granted unless the complaint states facts sufficient to constitute a cause or causes of action against the defendant and the answer does not state facts sufficient to constitute a defense to the complaint. See Conley v. Gibson, 355 U.S. 41, 45–46 (1957). A plaintiff's Rule 12(c) motion tests only the sufficiency of the defendant's answer and does not resolve the merits of the plaintiff's claims or any disputes of fact. Butler v. United States, 702 F.3d 749, 751 (4th Cir. 2012). The standard of review applicable to motions for judgment on the pleadings under Rule 12(c) is the same de novo standard applicable to motions under Rule 12(b)(6). All well-pleaded factual allegations must be taken as true and must be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Nevertheless, a court is not obliged to accept as true allegations that "represent unwarranted inferences, unreasonable conclusions, or arguments . . . that contradict matters properly subject to judicial notice or by exhibit." Blankenship v. Manchin, 471 F.3d 523, 529 (4th Cir. 2006).

### D. Evidentiary Hearing

An evidentiary hearing in a federal habeas action challenging a state conviction will not be held unless: (1) petitioner shows a new rule of law or that the factual basis for the claim at issue was unavailable; and (2) the facts sought to be proved would "establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2245(e)(2). In deciding whether to grant an evidentiary hearing, a federal district court must consider whether such a hearing could enable an applicant to prove the petition's

factual allegations which, if true, would entitle the applicant to federal habeas relief. See, e.g., Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Because the deferential standards prescribed in § 2254 control whether to grant habeas relief, a federal district court must take into account those standards in deciding whether an evidentiary hearing is appropriate. See id. ("Whether [an applicant's] allegations, if proven, would entitle him to habeas relief is a questioned governed by [AEDPA].")

### E. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a party "fails to make a showing sufficient to establish the existence of an element essential to his case," Rule 56(a) mandates entry of summary judgment against that party. Celotex v. Catrett, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, the evidence is viewed in the light most favorable to the non-moving party with all justifiable inferences drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III.   DISCUSSION

Although difficult to decipher, Grant seems to object to numerous recommendations from the R&R, arguing that the magistrate judge erred in finding that: (1) Grant failed to timely file his ineffective assistance of counsel claim within the statute of limitations; (2) the evidence presented during his trial was sufficient to establish his guilt beyond a reasonable doubt; and (3) Grant does not have a viable ineffective assistance of counsel claim.

### A. Statute of Limitations under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides relief to a person in custody pursuant to the judgment of a state court if the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes a one-year statute of limitations period that begins to run on the date a petitioner's conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review.[2] Id. § 2244(d)(1); Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). Further, the statute requires a petitioner to exhaust available remedies in state court before the federal court may consider a claim. Id. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).

State collateral review tolls the one-year statute of limitations under § 2244(d)(1)(A) for properly filed pleadings. Artuz v. Bennet, 531 U.S. 4, 8 (2000); see 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection.") (emphasis added). The time, however, does not begin anew after completion of the post-conviction proceedings, but rather is only suspended while the post-conviction proceedings are pending. See Harris, 209 F.3d at 328; see also, Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) ("While a 'properly filed' application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of

---

[2] The statute also provides other possible accrual dates for the one-year limitations period that are not relevant here. See 28 U.S.C. § 2244(d)(1)(B)–(D).

limitations once the limitations period has expired."); Smith v. McGinnis, 208 F.3d 13, 17 (2nd Cir. 2000) ("We therefore hold that proper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run."). "Upon final disposition of the state post-conviction proceeding, the running of the § 2244(d) one-year period resumes." Harris, 209 F.3d at 327.

Applying these criteria to the present case, Grant failed to timely file his petition within the one-year limitations period pursuant to AEDPA procedures. See 28 U.S.C. § 2244(d)(1)(A). In light of his failure to file a timely petition for rehearing, Grant's state court convictions became final on February 27, 2009, fifteen days after the South Carolina Court of Appeals issued its opinion in Grant's direct appeal. See Gonzalez v. Thaler, 132 S. Ct. 641, 654 (2012) (rejecting use of remittitur dates in applying 28 U.S.C. § 2244(d)(1)(A) and stating that because petitioner "did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired"); S.C. App. Ct. R. 221(a) (petition for rehearing must be actually received by the court within fifteen days from opinion). Grant's failure to file a petition for rehearing precluded him from seeking certiorari from the South Carolina Supreme Court, as the remittitur must be issued absent the timely filing of such a petition. See S.C. App. Ct. R. 221(b); see also Wise v. S.C. Dep't of Corr., 642 S.E.2d 551, 551 (S.C. 2007) ("When the remittitur has been properly sent, the appellate court no longer has jurisdiction over the matter and no motion can be heard thereafter."). Further, since Grant failed to seek certiorari from the South Carolina Supreme Court, he is not entitled to the tolling of an additional ninety days. See Gonzalez, 132 S. Ct. at 654 ("[B]ecause

[petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired."). Additionally, Grant's failure to seek certiorari from the South Carolina Supreme Court correspondingly precluded Grant from meeting the jurisdictional requirements of the Supreme Court of the United States. See 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . . .").

Thus, the one-year limitations period in this case began on February 27, 2009 and expired one year later on February 27, 2010. Grant, however, filed his state post-conviction relief action on March 25, 2010, three-hundred and ninety-one days after the accrual of the one-year statute of limitations. While Grant argues that the instant action was timely filed as the state post-conviction relief action tolled the limitations period, such tolling suspends, not restarts, the limitations period under AEDPA. See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000). Even if Grant's post-conviction relief application had been properly filed and could toll the statute of limitations, the current federal petition, filed on April 15, 2014, would still be untimely as the time period for filing the federal habeas petition had already expired when Grant filed his post-conviction relief application. Therefore, once his state post-conviction proceedings become final on April 11, 2014, the federal habeas statute of limitations had already expired. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (holding that a state post-conviction motion filed after the expiration of the federal habeas statute of

limitations period cannot toll the period because there is no period remaining to be tolled); Ballard v. Cuccinelli, 2011 WL 1827866, at *2 (E.D. Va. May 12, 2011) ("[A] state post conviction motion filed after expiration of the limitations period cannot toll the period, because there is no period remaining to be tolled." (quoting Deville v. Johnson, 2010 WL 148148, at *2 (E.D. Va. Jan. 12, 2010))); Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D.N.Y. 1998) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."). As such, Grant's petition is untimely, unless the limitations period is subject to equitable tolling.

### B. Equitable Tolling and Actual Innocence

AEDPA's statute of limitations is subject to equitable tolling "in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). Equitable tolling "must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Harris, 209 F.3d at 330. To be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). On the other hand, misleading or incorrect advice provided by counsel, such as "simple miscalculation that leads a lawyer to miss a filing deadline," Holland, 560 U.S. at 651, is an insufficient justification for the application of equitable tolling. See Rouse v. Lee, 339 F.3d 238, 248 (4th Cir. 2003).

In his petition, Grant contends that he is entitled to an equitable exception to § 2244(d)(1)'s statute of limitations, known as the "actual innocence" exception. Grant

11

argues in his response to Bush's motion for summary judgment and in his motions for judgment on the pleadings and for an evidentiary hearing that he is actually innocent of his crimes of conviction and, thus, under McQuiggin, this court should consider the merits of his petition.[3] See McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013). "[A] credible showing of innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." Id. at 1931. Thus, "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring a habeas petition, for instance, after expiration of the statute of limitations. Id. at 1928. "A petitioner claiming actual innocence 'must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Stallings v. Warden of Evans Corr. Inst., No. 2:10-cv-02668, 2011 WL 4549229, at *5 (D.S.C. Oct. 3, 2011) (quoting House v. Bell, 547 U.S. 518, 536–37 (2006)).

However, "claims of actual innocence are rarely successful," Schlup v. Delo, 513 U.S. 298, 324 (1995), and "should not be granted casually," Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998). To invoke this exception to AEDPA's statute of limitations, a petitioner must show "that it is more likely than not that no reasonable juror would have

---

[3] Specifically, Grant argues:

> [T]he state has unconstitutionally obtained a verdict based on scant circumstantial evidence. Where the trial record shows that the state produced no proof or eyewitness to say at trial they saw me shoot anyone. Moreover, what state did was present video depicting me in area and allowed jury to speculate that at time of shooting, since I was in area it is a reasonable probability it was me shooting. Such evidence presented cannot be proof of guilt beyond a reasonable doubt . . . . This witness who was next to me confirmed that it was not me that did shooting and simply because my clothes according to state stood out among others and my statement I was wearing those clothes without more should not and cannot form basis of a conviction as it was herein . . . .

Pl.'s Objections 2.

convicted him in light of the new evidence." McQuiggin, 133 S. Ct. at 1935 (quoting Schlup, 513 U.S. at 327). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error." McQuiggin, 133 S. Ct. at 1936 (quoting Schlup, 513 U.S. at 316). This formulation "ensures that petitioner's case is truly 'extraordinary,' while still providing petitioner a meaningful avenue by which to avoid manifest injustice." Schlup, 513 U.S. at 327 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)).

As stated earlier, Grant argues in his response to Bush's motion for summary judgment that the state "unconstitutionally obtained a verdict based [on] scant circumstantial evidence." Pl.'s Objections 2, ECF No. 50. The only "new" evidence referenced by Grant is the testimony of Cornelius Morrison ("Morrison"), who testified at Grant's post-conviction relief hearing that he was near Grant when gunshots were fired. PCR Hr'g Tr. 45, Feb. 28, 2012, ECF No. 24-2. Morrison further testified that he was with Grant on the night in question and never saw Grant use a firearm, PCR Hr'g Tr. 46, ECF No. 24-2, and that Grant looked around to determine where the shots came from, PCR Hr'g Tr. 47.

At the post-conviction relief hearing, Judge Harrington found that Grant's "newly discovered evidence," which consisted solely of Morrison's testimony, was "not credible." Order of Dismissal 11, ECF No. 24-2. Namely, Judge Harrington noted that Morrison's testimony concerning Grant's actions after the gunshots was inconsistent with the prosecutor's testimony describing the scene on the surveillance video. Id. Specifically, the prosecutor described the video as showing people running away from

the area while Grant remained in the same location. Grant then ran in the direction of the victim, not away from the gunshots, as one would expect if the shots were fired by a third party. Additionally, another witness at trial, Justin Singleton ("Singleton"), testified that his friend and Grant's friend, Glen Gladden ("Gladden"), was also shot at the scene. Trial Tr. vol. 1, 437, March 9, 2006, ECF No. 24-2. Singleton testified that Grant visited Gladden in the hospital and stated, "my bad." Singleton also testified that he had told investigators that Grant did the shooting and was apologizing "for shooting Glen." Id. Further, by Grant's own admission, he did not inform his attorney of Morrison, and Judge Harrington held that Grant failed to show how the information Morrison provided could not have been discovered before trial. Pet'r's PCR Appl.

Judge Harrington's factual findings are supported by the evidence presented during Grant's trial. In particular, Judge Harrington's credibility finding is a factual determination entitled to deference in this action. Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 1998); see 28 U.S.C. § 2254(e)(1) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear."); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (Title "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"). Grant may overcome this presumption of correctness only by showing "clear and convincing evidence to the contrary," Wilson v. Ozmint, 352 F.3d 847, 858–59 (4th Cir. 2003), which he has failed to do.

In light of the foregoing, Grant has failed to demonstrate that no reasonable juror could find him guilty beyond a reasonable doubt had Morrison testified during Grant's

14

trial.  Grant's "exculpatory" evidence is not "so strong that a court [could not] have confidence in the outcome of the trial . . . ."  Schlup, 513 U.S. at 316.  Accordingly, Grant's actual innocence claim does not toll the one-year limitations period.

In his objections, Grant makes additional arguments—not raised in his original petition or his response to Bush's motion for summary judgment—as to why he failed to file a timely petition.  Grant contends that he was in the process of filing his PCR, but his attorney, Joseph Savitz, told him the incorrect day by which he was required to file.  Pet'r's Objections 4.  Grant further contends that he was delayed in filing his PCR because he was transferred from Lieber Correctional Institution to Kirkland Correctional Institution, and then to Lee Correctional Institution, delaying receipt of his paperwork.  Id.  Generally, "'[t]ransfers between prison facilities, solitary confinement, lockdowns, restricted access to the law library and an inability to secure court documents do not qualify as extraordinary circumstances.'"  Allen v. Johnson, 602 F. Supp. 2d 724, 727–28 (E.D. Va. 2009) (footnote omitted) (quoting Warren v. Kelly, 207 F. Supp. 2d 6, 10 (E.D.N.Y. 2002)); see also Sullivan v. Ozmint, No. 8:08-cv-1088-, 2008 WL 1994835, at *3 (D.S.C. Apr. 14, 2008) ("[L]ockdowns, restricted library access and transfers do not constitute extraordinary circumstances sufficient to equitably toll the [AEDPA] statute of limitations.  Prisoners familiar with the routine restrictions of prison life must take such matters into account when calculating when to file a federal [habeas] petition . . . ." (quoting Atkins v. Harris, 1999 WL 13719, *2 (N.D. Cal. Jan.7, 1999))).  Further, as stated above, misleading or incorrect advice provided by counsel, such as "simple miscalculation that leads a lawyer to miss a filing deadline," Holland, 560 U.S. at 651, is an insufficient justification for the application of equitable tolling.

The court finds that Grant has failed to establish that he diligently pursued his rights, but that some extraordinary circumstance stood in the way to justify the delay. See Lochnar v. Thomas, 517 U.S. 314, 326 (1996) (the party seeking equitable tolling must have acted with "reasonable diligence" throughout the period he seeks to toll). Grant's transfer among prison facilities does not amount to an extraordinary circumstance to warrant tolling the statute of limitations. Similarly, his counsel's miscalculation of the filing deadlines also does not rise to the level of an extraordinary circumstance.

Additionally, although Judge Young equitably tolled the statute of limitations in Grant's state PCR proceedings—referencing Grant's attorney's advice and prison transfer—such equitable tolling does not further toll the statute of limitations in his federal habeas petition because it is not considered "properly filed." See 28 U.S.C. § 2244(d)(1) (the one-year statute of limitations is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." (emphasis added)); see also Ballard, 2011 WL 1827866, at *2 ("[A] state post conviction motion filed after expiration of the limitations period cannot toll the period, because there is no period remaining to be tolled." (quoting Deville v. Johnson, 2010 WL 148148, at *2 (E.D. Va. Jan. 12, 2010))).

Therefore, Bush's motion for summary judgment is granted.

### C. Ineffective Assistance of Counsel

Furthermore, even if Grant timely filed his habeas petition, summary judgment would still be proper. In his petition, Grant raises one ground of ineffective assistance of counsel, but fails to allege any facts to support his claim. See Pet'r's Pet. for Writ of Habeas Corpus 6, ECF No. 1. Generally, pro se petitions are to be given liberal

construction, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), and "are not scrutinized as closely for compliance with formal standards as are those drawn by practicing attorneys," Golden v. Newsome, 755 F. 2d 1478, 1480 n.4 (11th Cir. 1985). However, there are limits on the duty of a court in this regard. It is well settled that a district court need not construct claims from obscure references in a pro se petition. See Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Thus, there must be more than a "fleeting reference" to properly present an issue. Id. at 1278. Such "[u]nsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992, overruled on other grounds by Gray v. Netherland, 518 U.S. 152, 165–66 (1996).

Further, to the extent Grant's ineffective assistance of counsel claim is based on the alleged incompetence of counsel during his state post-conviction proceedings, his claim undoubtedly fails. Federal law provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). The Supreme Court recently explained that section 2254 precludes a habeas petitioner from "relying on the ineffectiveness of his postconviction attorney[s]" "as an independent basis for overturning his conviction." Martinez v. Ryan, 132 S. Ct. 1309, 1320 (2012). Therefore, even if Grant's attorneys had made egregious errors during his post-conviction proceedings, those errors simply would not amount to free-standing claims for federal habeas relief. Accordingly, Grant is not entitled to relief pursuant to 28 U.S.C. § 2254.Grant's objections are overruled.

### D. Motion for Evidentiary Hearing

Lastly, Grant is not entitled to an evidentiary hearing. Pursuant to section 2254(e)(2), the court "shall not" hold an evidentiary hearing unless the Petitioner "shows that" he meets the requirements of both subsections (A) and (B). See 28 U.S.C. § 2254(e)(2). Petitioner's ineffective assistance of counsel claim certainly does not meet the standard in subsection (A)(i) because his claim does not rely on a new rule of constitutional law but instead relies on Strickland v. Washington, 466 U.S. 668 (1984). Nor does his claim rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). Grant has therefore not shown that these ineffective assistance of counsel claims meet the standard in § 2254(e)(2)(A). Furthermore, Grant has not shown that the "facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for the ineffective assistance of counsel, "no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

## IV. CONCLUSION

Based upon the foregoing, the magistrate judge's R&R is **AFFIRMED**, Bush's motion for summary judgment is **GRANTED**, and Grant's motions for judgment on the pleadings and for an evidentiary hearing are **DENIED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**August 11, 2015
Charleston, South Carolina**